Not Intended for Print Publication

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **BEACHER RALPH COLEMAN,** | ) | |
| | ) | |
| Plaintiff | ) | Case No. 1:05CV00008 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL HOLLAND, TRUSTEE, ET AL.,** | ) | By: James P. Jones |
| | ) | Chief United States District Judge |
| | ) | |
| Defendants. | ) | |

*Carl E. McAfee, McAfee Law Firm, P.C., Norton, Virginia, for Plaintiff; Carolyn O. Dutrow, Office of the General Counsel, UMWA Health & Retirement Funds, Washington, D.C., and Charlie R. Jessee, Jessee, Read & Ely, Abingdon, Virginia, for Defendants.*

In this action seeking pension benefits from the United Mine Workers of America 1974 Pension Trust, I find that the trustees did not abuse their discretion and affirm their decision denying the plaintiff's claim.

*I. Background.*

In 1998, plaintiff Beacher Ralph Coleman applied for a service pension from the United Mine Workers of America 1974 Pension Trust ("1974 Pension Trust"). Coleman claimed pension credit for employment with various coal companies

between 1963 and 1998. Coleman's claim was denied on October 20, 2003, because the trustees of the 1974 Pension Trust ("Trustees") found that Coleman had failed to establish any credit hours and was thus ineligible for a pension under the 1974 Pension Plan.

In accordance with the 1974 Pension Plan's appeal procedures, Coleman filed a request for hearing on January 20, 2004. A hearing was held on August 17, 2004, and the Trustees issued a decision on September 7, 2004, sustaining the denial of Coleman's application for benefits. The Trustees found that the evidence continued to show that Coleman was not entitled to any credit for his service and was therefore not entitled to pension benefits.

Coleman filed this action against the Trustees on February 3, 2005, challenging the final denial of his application for benefits. Coleman's cause of action arises under the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. § 1001-1461 (West 1999 & Supp. 2005) ("ERISA"), and jurisdiction of this court exists pursuant to 29 U.S.C.A. § 1132(f).

The defendant Trustees have filed the administrative record of their decision to deny Coleman benefits, and the parties have briefed cross-motions for summary judgment based on that record, pursuant to Federal Rule of Civil Procedure 56. The case is thus ripe for decision.

## II. Standard of Review.

The standard of review of a decision made by fiduciaries of an ERISA-controlled benefit plan generally is de novo. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the plan gives the fiduciaries discretion to determine benefit eligibility or to construe plan terms, however, the standard of review is whether the trustees abused their discretion. *See Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342 (4th Cir. 2000). In considering the reasonableness of a fiduciary's discretionary decision, the court may consider the following factors:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Id.* at 342-43.

The Fourth Circuit has adopted the abuse of discretion standard of review for decisions under the 1974 Pension Plan. *See Boyd v. Trustees of the United Mine Workers Health & Ret. Funds*, 873 F.2d 57, 59 (4th Cir. 1989). In exercising their discretion under the 1974 Pension Plan, the Trustees are obligated to pay legitimate

- 3 -

Case 1:05-cv-00008-JPJ-PMS   Document 18   Filed 11/01/05   Page 3 of 11   Pageid#: 303

claims and to guard trust assets against improper ones. *See Sargent v. Holland*, 114 F.3d 33, 35 (4th Cir. 1997). If substantial evidence supports the Trustees' decision, then the determination must be affirmed. *See Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir. 1997). "Substantial evidence . . . is evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Such evidence consists of "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id*. Under the deferential standard applicable to this case, the court is limited to the evidence that was before the Trustees at the time of their decision. *See Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994).

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Where the court must decide the case on the basis of an administrative record, the summary judgment motion "stands in a somewhat unusual light, in that the administrative record provides the complete factual predicate for the court's review." *Krichbaum v. Kelley*, 844 F. Supp. 1107, 1110 (W.D. Va. 1994), *aff'd*, No. 94-1496, 1995 WL 449668 (4th Cir. July 31, 1995) (unpublished). Because the factual record is closed, the "plaintiff's burden on summary judgment is not materially different from his ultimate burden on the merits." *Id.* "To survive
- 4 -

summary judgment, then, plaintiff must point to facts in the administrative record —or to factual failings in that record—which can support his claims under the governing legal standard." *Id.*

## *III. Facts.*

Coleman is a former coal miner who worked for several different coal companies between 1963 and 1998. The Trustees denied Coleman pension credit for his work at every coal company that had employed him, but Coleman only challenges the Trustees' failure to award him credit for his work at Blue Chip Corporation ("Blue Chip"), from 1975 until 1991, and at Bald Eagle Coal Corporation ("Bald Eagle"), from 1991 until 1998. Had Coleman been credited for the work he performed at these companies, he presumably would be eligible for benefits under the Plan.

Both Blue Chip and Bald Eagle were signatories to the 1974 Pension Plan, and Coleman claimed pension credit for his employment as a buggy operator and general inside laborer at each. However, the record shows that Coleman had an ownership interest in each of these corporations. He was one of seven owners of Blue Chip while it was in operation, and he owned between twenty and twenty-five percent of Bald Eagle from July 1989 onward.

- 5 -

In their initial denial of Coleman's application for pension benefits, the Trustees found that Coleman had zero hours of pension credit for the years 1975 through 1998 because he was "directly connected with the ownership, operation, or management" of Blue Chip and Bald Eagle. (R. 85.) On appeal Coleman argued and presented evidence that he was never involved in the operation or management of either Blue Chip or Bald Eagle, but he did not dispute the fact that he had an ownership interest in both corporations. Accordingly, the Trustees found that the evidence continued to show that Coleman was an owner of Blue Chip and Bald Eagle and sustained the denial of Coleman's application for benefits.

*IV. Analysis.*

The 1974 Pension Plan provides that to be eligible for a service pension once a miner reaches the age of fifty-five, the miner must have either (1) at least ten years of credited signatory service or (2) twenty years of credited service, including a specified amount of signatory service. (Mem. Supp. Defs.' Mot. Summ. J. Ex. B at Art. II.A & II.B, p.4.) Credited signatory or nonsignatory service is awarded only for "classified service," which means that the miner must be working in a job classified under the coal wage agreement to received credit. (Mem. Supp. Defs.' Mot. Summ. J. Ex. B at Art. IV, p. 17.) Additionally, the 1974 Pension Plan has an overriding

exclusion which provides that any miner who is "directly connected with the ownership, operation, or management of a mine" may not earn pension credit even if he is engaged in a "classified service." (Mem. Supp. Defs.' Mot. Summ. J. Ex. B at Art. IV.C(4), p. 23.)

The Trustees found that Coleman had an ownership interest in both Blue Chip and Bald Eagle and thus failed to meet the Plan's eligibility requirement. Coleman acknowledges that he had an ownership interest in Blue Chip and Bald Eagle, but contends that the Trustees' interpretation of the "ownership, operation or management" exclusion to prohibit credit on the basis of ownership alone constituted an abuse of discretion. His two main arguments in support of this contention are that such interpretation: (1) is at odds with the substantive intent of ERISA and (2) creates an arbitrary and capricious eligibility standard because it would exclude miners with minimal ownership interests in publicly held companies.

To support his contention that the Trustees' decision is at odds with the substantive intent of ERISA, Coleman relies on the Supreme Court case of *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 15 (2004), where the Court held that working owners may participate in ERISA-qualified benefit plans. In *Yates*, the sole shareholder and president of a professional corporation sought to take advantage of the anti-alienation clause in his corporation's ERISA-qualified

- 7 -

benefit plan. *Id*. at 10. The courts below all held that a working owner could not participate as an employee under ERISA and thus could not enforce the anti-alienation clause, but the Supreme Court reversed. *Id*. at 10-11. In reaching the conclusion that a working owner may qualify as a participant in an employee benefit plan covered by ERISA, the Court looked to the text of ERISA and found several indications that Congress intended working owners to qualify as plan participants. *Id*. at 12. The Court further noted that treating working owners as participants would further ERISA's purposes of: (1) promoting and facilitating employee benefit plans by encouraging working owners to create ERISA-qualified plans and (2) obtaining uniform national treatment of benefits by including working owners in the federal Act's coverage. *Id*. at 17.

Although *Yates* explained several reasons why allowing working owners to qualify as plan participants furthers the substantive intent of ERISA and stated that "[e]xcepting working owners from [ERISA's] coverage . . . is hardly consistent with a national uniformity goal," the ultimate holding is simply that it is permissible under ERISA for a plan to allow such coverage. *Id*. at 6. Given this holding that ERISA merely permits but does not require coverage of owner-employees in all qualified plans, it follows that a pension plan precluding an owner from qualifying as a participant is not fundamentally at odds with the substantive intent of ERISA. It is

well established that an award of benefits under an ERISA-qualified plan is governed in the first instance by the language of the plan itself. *Lockhart v. United Mine Workers of Am. 1974 Pension Trust*, 5 F.3d 74, 78 (4th Cir. 1993). Furthermore, the Trustees' interpretation of the 1974 Pension Plan's "ownership, operation or management" exclusion does not go so far as to preclude an owner employee from qualifying as participant; it simply denies pension credit to a participant for any time period in which he is directly connected with the ownership of a mine. I find that this interpretation of the exclusion is not fundamentally at odds with ERISA's intent, as articulated in *Yates*, to allow working owners to qualify as plan participants.

Coleman next argues that the Trustees' interpretation of the "ownership, operation or management" exclusion creates an arbitrary and capricious eligibility standard because it would preclude an employee who owns one share of stock in a large company from receiving pension credit. Coleman notes that this would lead to disparate treatment of corporate employees' claims and thereby frustrate ERISA's statutory purpose of uniformity. Indeed, an eligibility requirement excluding minority shareholders in publicly held corporations would undermine ERISA's uniformity goal to a much greater degree than an eligibility standard excluding only those employees with a significant interest in their company, and may therefore be at odds with the substantive requirements of ERISA. Nonetheless, this issue is not before the court.

The record here involves an applicant who owned significant portions of two closely-held corporations. Based on this record, the Trustees determined that Coleman was "directly connected with the ownership, operation, or management" of the mines in question and was ineligible for pension credit under the Plan. I find that this application of the ownership exclusion was neither arbitrary or capricious, and decline to consider the merits of Coleman's hypothetical argument.

In addition to his two principal arguments, Coleman also asserts that the Trustee's decision is contrary to the language of the Plan and renders such language internally inconsistent. After considering these contentions, I find that they are without merit. Indeed, I find that the Plan's clear language precludes owners such as Coleman from receiving credit for time worked. Under ERISA, the Trustees were required to discharge their duties "in accordance with the documents and instruments governing the plan" as long as doing so does not violate applicable federal law. 29 U.S.C.A. § 1104(a)(1)(D); *see also United Mine Workers of Am. Health & Ret. Funds v. Robinson*, 455 U.S. 562, 573-74 (1982). Therefore, I find that the Trustees' decision denying Coleman's application for benefits on the basis of his ownership in Blue Chip and Bald Eagle did not constitute an abuse of discretion.

*V. Conclusion.*

For the foregoing reasons, the defendants' Motion for Summary Judgment will be granted and final judgment entered in their favor.

DATED: November 1, 2005

/s/ James P. Jones
Chief United States District Judge

- 11 -

Case 1:05-cv-00008-JPJ-PMS   Document 18   Filed 11/01/05   Page 11 of 11   Pageid#: 311